IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JORGE LUCIO                                          §
    TDCJ-CID #578851                          §
                             §
v.                                                   §          C.A. NO. C-10-091
                             §
RICHARD L. CRITES, JR., ET AL.           §

## OPINION ORDERING DISMISSAL OF THE ACTION

In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Jorge

Lucio claims that he was classified as a member of a Security Threat Group in retaliation for his

filing grievances concerning visitation with his brother.  (D.E. 1).  In addition, he claims that he

is being housed in administrative segregation in violation of his due process rights.  Id.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996),

any prisoner action brought under federal law must be dismissed if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.

Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or

proceeds as a pauper.  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam);

Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's pro se complaint

must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his

allegations must be accepted as true, unless they are clearly irrational or wholly incredible.

Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, plaintiff's retaliation and due process claims are dismissed

with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and

1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28

U.S.C. § 1331.  Upon consent of the plaintiff, (D.E. 11), this case was referred to the

undersigned United States magistrate judge to conduct all further proceedings, including entry of

final judgment.  (D.E. 12); see also 28 U.S.C. § 636(c).

## II.  BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional

Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in

Beeville, Texas.  He filed this lawsuit on March 29, 2010, and named the following individuals

as defendants: Warden Richard Crites; Assistant Warden Norris Jackson; and the Gang

Intelligence Officer, Sergeant Buttery.

A Spears[1] hearing was held on April 20, 2010.  The following allegations were made in

plaintiff's original complaint, (D.E. 1), or at the hearing:

When plaintiff entered the TDCJ-CID, he was a member of the Texas Syndicate, a

Security Threat Group.  In 2000 and 2001, plaintiff participated in and completed a Gang

Renouncement and Disassociation Process.  Thereafter, he was housed in general population.

In late 2005, or early 2006, plaintiff submitted a request to visit his brother Gregorio,

who is also in prison.[2]  He had previously been housed with his brother while incarcerated at the

Darrington Unit, the Ramsey I Unit, and the Ramsey II Unit.  He tried to find out why he could

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Plaintiff testified that, TDCJ regulations allow incarcerated family members to have one visit per year if they both have no disciplinary cases.

not visit with his brother and, after a year and a-half of "getting the run around," Classification

Officer Gaitan told him that he could not visit his brother because the State Classification Office

had them listed as enemies.  Plaintiff objected to this classification and he began writing to

Huntsville Classification and filing grievances in an attempt to get this information corrected.

On or about November 15, 2007, fighting erupted at the McConnell Unit between two

factions of another Security Threat Group, Tango Blast.[3]  An institutional lock-down was

imposed.  Plaintiff was on lock-down with approximately thirty Tango Blast members for thirty

days.  Afterwards, a gang investigator, Sergeant Popal, interviewed plaintiff and advised him

that he had orders from Warden Crites and Warden Jackson to either place him in administrative

segregation, or to transfer him to another unit due to his "prior history."

On January 27, 2008, plaintiff was assigned to administrative segregation as being a

confirmed member of the Texas Syndicate.  He has remained in administrative segregation since

that time.

In a Step 2 grievance dated September 26, 2008, plaintiff complained that his

constitutional rights were being violated by being held in administrative segregation "against his

will," and by being classified as a Security Threat Group which "only serves to put my life in

immediate danger."  On October 16, 2008, a regional officer responded, rejecting his grievances:

> An investigation has been conducted into your complaint.  Records
> indicate that you are classified as a Security Threat Group Member
> and appropriately housed.  The Texas Department of Criminal
> Justice has initiated a process which provides a method for
> offenders to renounce their membership with a known Security
> Threat Group.  This procedure is entitled "GRAD" or Gang

---

[3] Plaintiff states that the Tango Blast is not a Security Threat Group; however, Tango Blast is a gang that started in the Texas prisons.  Members are usually identified with a region, such as Tango Houston, Tango Dallas, etc.

3

> Renouncement and Disassociation Process.  Those offenders
> willing to renounce their gang affiliation are required to participate
> in the process and associated activities until successful completion
> is attained.  The process can take a lengthy period of time to
> complete.  No further action warranted by this office.

Plaintiff claims that Warden Crites and Warden Jackson had him placed in administrative segregation in retaliation for his filing grievances and writing to Huntsville concerning visitation with his brother.  He alleges that all defendants are violating his due process rights by retaining him in administrative segregation and by refusing to meet with him and reevaluate his status. For relief, plaintiff wants his classification file corrected to eliminate any gang affiliation, and he wants to be released into general population.

### III.  DISCUSSION

A.      **Legal Standard For A Civil Rights Action Pursuant To 42 U.S.C. § 1983.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies.  42 U.S.C. § 1997e(c)(2).  It is well established that "[to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed.  Id. (citation omitted).

**B.      Plaintiff's Claim Of A Due Process Violation Is Without Merit.**

Plaintiff alleges that his assignment to administrative segregation violates his due process

rights.  He claims that his assignment to administration constitutes punishment, and argues that

defendants refuse to reevaluate his placement.

Generally speaking, due process protections attach only to those punishments that impose

an atypical and significant hardship in relation to ordinary incident of prison life, or to those that

extend the length or duration of confinement.  Sandin v. Conner, 515 U.S. 472, 484-86 (1995).

The Fifth Circuit has held that "administrative segregation, without more, simply does not

constitute a deprivation of a constitutionally cognizable liberty interest."  Pichardo v. Kinker, 73

F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)).

Furthermore, the protections afforded by the Due Process Clause do not extend to "every change

in the conditions of confinement" which are adverse to a prisoner.  Madison v. Parker, 104 F.3d

765, 767 (5th Cir. 1997) (citing Sandin).

Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due

process challenge to a change in his custodial classification.  Sandin, 515 U.S. at 484.  Cases

where segregated confinement is sufficiently atypical to implicate a due process liberty interest

involve circumstances much harsher than those presented here.  In Wilkerson v. Stalder, the

Fifth Circuit held that due process *might* have been violated where the plaintiff had been kept on

lock-down status for thirty years.  329 F.3d 431, 436 (5th Cir. 2003) (remanding for

determination whether such confinement was "atypical" under Sandin); but see Lair v. Purdy,

188 F. App'x 250, 252 (5th Cir. 2006) (per curiam) (unpublished) (420 days in segregated

custody did not violate inmate's due process rights).

5

In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court held that transfer to the

Ohio "Supermax" facility implicated a liberty interest, in part because the conditions there were

"more restrictive than any other form of incarceration in Ohio." Id. at 214. The Wilkinson

Court noted that at the Supermax facility, "almost all human contact is prohibited." Id. at 223.

Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent

communication from one cell to another; prisoners take all their meals alone in their cells rather

than a common area; and "opportunities for visitation are rare" and are conducted through glass

walls. Id. at 223-24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a

light remains on at all times. Id. at 224. Moreover, confinement at the Supermax facility is

indefinite, and otherwise eligible inmates are disqualified for parole consideration. Id. These

conditions and others were sufficiently extraordinary that the Supreme Court concluded

prisoners had a liberty interest in avoiding assignment to the Supermax facility. Id.

The thirty-year confinement in Wilkerson and the extreme conditions in Wilkinson are

distinguishable from the present facts. Here, plaintiff was identified as a gang member and

placed in administrative segregation for that reason. Although he claims that he previously

denounced his gang membership in the Texas Syndicate, he was advised by Officer Gaitan that

defendants believed it was necessary for him to be in administrative segregation based on his

past history. Under Sandin, he does not have a protected liberty interest in his classification or

corresponding housing assignment. His classification and housing do not affect the fact or

length of the duration of his confinement. Although administrative segregation may be the most

restrictive and least desirable housing, his confinement there is neither atypical nor a significant

6

hardship.  Thus, plaintiff's due process claim against defendants fails to state a constitutional

claim upon which relief can be granted, and it is therefore, dismissed.

**C.      Plaintiff's Claim For Retaliation Is Without Merit.**

Plaintiff claims that he was placed in administrative segregation in retaliation for filing

grievances and making inquiries about visiting his brother.

A prisoner's First Amendment right of access to the courts includes the right to seek

redress through an established prison system.  See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th

Cir. 1989).  Prison officials may not retaliate against a prisoner for exercising this right.  Woods

v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).  Because it is well established that prison officials

may not retaliate against a prisoner for exercising the right to file lawsuits and administrative

grievances, actions that might not otherwise be offensive to the Constitution can give rise to a

constitutional claim if taken in retaliation for the exercise of the protected conduct.  Id. at 1165

("an action motivated by retaliation for the exercise of a constitutionally protected right is

actionable, even if the act, when taken for a different reason, might have been legitimate")

(citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific

constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her

exercise of that right, (3) a retaliatory adverse act, and (4) causation."  Jones v. Greninger, 188

F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir.

1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation.

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  "Mere conclusory

allegations of retaliation will not withstand a summary judgment challenge."  Woods, 60 F.3d at

1166.  The Fifth Circuit has explained that an "inmate must produce direct evidence of

motivation or, the more probable scenario, 'allege a chronology of events from which retaliation

may be plausibly inferred.'"  Id. (citation omitted).

The purpose of allowing retaliation claims pursuant to § 1983 is to ensure that prisoners

are not unduly discouraged from exercising their constitutional rights.  Morris v. Powell, 449

F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis*

that they would not deter the ordinary person from further exercise of his rights.  Id.  Such acts

do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

Id.  For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a

transfer to a more dangerous unit might constitute an adverse retaliatory act.  Id. at 687.

Thus, to prevail on his retaliation claim against defendants, plaintiff must establish that:

(1) defendants had retaliatory intent based on plaintiff exercising his First Amendment right of

filing grievances; (2) the retaliatory act was more than inconsequential or *de minimis*, and was

capable of deterring a person of ordinary firmness from further exercising his constitutional

rights; and, (3) but for the retaliatory motive, the adverse action would not have occurred.

McDonald, 132 F.3d at 231.

Plaintiff claims that defendants assigned him to administrative segregation in retaliation

for his making inquiries about visiting his brother.  However, this allegation fails to state a

motive for any defendant to retaliate against plaintiff.  He does not claim that he wrote to

Huntsville complaining about any of the defendants, but rather objecting to the *State's* finding

that he and his brother were enemies.  Indeed, there is no allegation that defendants had any

8

involvement in classifying plaintiff and his brother as enemies.  Plaintiff fails to establish that, but for a retaliatory motive, he would not have been placed in administrative segregation.  He was advised that he was placed in administrative segregation because of his Security Threat Group status.

Moreover, assigning plaintiff to administrative segregation did not deter him from filing this lawsuit, nor does he suggest that he stopped filing grievances.  There are simply no facts from which retaliation can be inferred.  Thus, plaintiff's retaliation claim is dismissed for failure to state a claim.

## IV.  CONCLUSION

For the reasons stated above, plaintiff's claims are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b)(1).

Ordered this 28th day of April 2010.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE